1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   SERGIO GAVALDON, et al.,                    CASE NO. 12cv3016-LAB (MDD)

12                            Plaintiffs,         **ORDER DENYING MOTION TO**
                                                  **VACATE ARBITRATION AWARD;**
          vs.                                     **AND**
13

14                                                **ORDER TO SHOW CAUSE RE:**
     STANCHART SECURITIES                         **DISMISSAL**
15   INTERNATIONAL, INC., et al.,

16                            Defendants.

17

18         This case concerns a dispute over investments. Plaintiffs allege Defendants gave

19   them bad counsel by recommending that they sell their conservative investments and buy

20   risky and unsuitable investments, including a fund connected with the now-infamous Bernard

21   Madoff. This, they allege, caused them to lose millions of dollars. Relying on an arbitration

22   clause in the brokerage agreement, the Gavaldons filed a claim with the Financial Industry

23   Regulatory Authority (FINRA), and the matter went to arbitration.

24         Initially, the respondents StanChart Securities International, Inc. ("SCSI"), Standard

25   Chartered International (Americas) Ltd. ("SCBI"), and Standard Chartered International

26   (USA) Ltd. ("SCI") (collectively, "Respondents"), moved to dismiss the claim, but the panel

27   denied the motion without prejudice, reasoning that sworn testimony was needed. (Mot.,

28   Ex. A (Award) at 2.)

Late in the arbitration, the Respondents filed a complaint in this Court, in 12cv2522-LAB (MDD) *StanChart Securities Int'l.,* et al. *v. Gavaldon,* et al. (filed October 16, 2012), seeking to enjoin the ongoing arbitration. After the Court denied the motion for preliminary injunction, they voluntarily dismissed that action.

After the arbitration continued, the Respondents renewed their motion to dismiss, arguing the FINRA panel lacked jurisdiction over the dispute. The panel granted this motion on November 28, 2012, finding a lack of jurisdiction and improper venue. Plaintiffs have asked the Court to vacate that decision, pursuant to the Federal Arbitration Act (FAA). They argue the panel failed to meet its obligations to decide the merits of their claims. In the alternative, they ask for a declaratory judgment regarding the proper forum for arbitration. Their FAA claims are that the panel either manifestly disregarded applicable law, or exceeded its authority by refusing to make a decision on the merits when required to do so. The Defendants in this action are SCSI and SCBI only.

The Court has federal question jurisdiction over the primary claim.  Plaintiffs argue that the Court can also exercise diversity jurisdiction over this action, which presumably would include the declaratory relief claim. But the complaint doesn't plead facts showing that diversity jurisdiction exists, because it doesn't allege which state(s) the Gavaldons are citizens of, or which state or nation SCBI is incorporated in.[1]  The Court might also be able to  exercise supplemental jurisdiction over the declaratory relief claim.

**Legal Standards**

Although the parties may obtain review of some arbitration awards under state statutory or common law, the FAA provides the exclusive basis and standards in federal law for modifying or vacating an arbitration award. *See Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590 (2008). The briefing on both motions invokes only the FAA's

/ / /

---

[1] The complaint alleges each of the Gavaldons "maintains a residence in San Diego." (Compl., ¶¶ 3–4.)

standards, and neither party has asked the Court to apply some other law or any legal standard other than those set forth in the FAA.

The burden of establishing grounds for vacating an arbitration award is on the party seeking it. *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010). The "manifest disregard" standard is difficult to satisfy. As the Ninth Circuit has explained,

> "Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (citing *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)). "To vacate an arbitration award on this ground, '[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it.' " *Id.*

*Biller v. Toyota Motor Corp.*, 668 F.3d 655,665 (9th Cir. 2012).  An error of law or a failure to understand the law is insufficient. *Carter v. Health Net of California, Inc.*, 374 F.3d 830, 838 (9th Cir. 2004); *Kyocera Corp. v. Prudential–Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (citation omitted) ("[C]onfirmation is required even in the face of erroneous findings of fact or misinterpretations of law.")

Arbitrators are not required to state reasons for their findings, but are presumed to have made their award on permissible grounds. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9 th Cir.1992). "[T]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir.2009) (citation omitted). It follows from these authorities that an incomplete explanation of the panel's award, or even a lack of explanation, will not support vacatur.

The Court can also vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  Arbitrators can exceed their powers by failing to arbitrate all matters submitted to them by agreement. *Valve Corp. v. Activision Blizzard, Inc.,* 390 Fed. Appx. 679, 681 (9th Cir. 2010) (citing *W. Employers Ins. Co. v. Jefferies & Co., Inc.*, 958 F.2d 258, 262 (9th Cir. 1992)). But arbitrators' construction interpretation of their contractual duties is entitled to the same deference as their

1  determinations on the merits. *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 733

2  (9th Cir. 2006). Therefore, if the arbitrators' interpretation of the arbitration agreement (as well

3  as applicable rules and law) is plausible, it will be upheld. *Lagstein*, 607 F.3d at 643. Thus,

4  the standard of review and degree of deference will be equivalent, regardless of which of

5  Plaintiffs' two theories the Court analyzes.

6  **Discussion**

7         **Arguments Before the Arbitration Panel**

8         It is possible for the arbitration panel to have acted irrationally, or to have manifestly

9  disregarded the law, only to the extent arguments and legal authority were presented to them

10 making clear what the law was and what their obligations were. To the extent an argument

11 wasn't made, or wasn't made clearly, the panel cannot have disregarded it in a way that

12 satisfies the standard. While the Court will of course consider arguments made in the

13 pleadings in this case, its primary concern is with the arguments Plaintiffs made to the panel.

14 The Court therefore primarily looks to the motion and opposition before the panel (the

15 "FINRA Motion" and "FINRA Opposition", respectively),[2] and the transcript of argument when

16 the motion was renewed. However strong their arguments to this Court might be, Plaintiffs

17 can only prevail based on the strength of their arguments to the panel, coupled with a

18 showing that the panel understood but disregarded what it was told.

19        **Initial Arguments to the Panel**

20        The FINRA Motion and Opposition set forth the parties' initial arguments, which are

21 as follows. Respondents sought dismissal of the claims on the grounds that the Gavaldons

22 were never customers (within the meaning of the arbitration agreement) of the Respondents.

23 It also denies that the Gavaldons were shareholders or directors of either S&A or Harley at

24 the time the claims arose. The FINRA Motion says that the accounts in question were

25 maintained by S&A and Harley, and admits, without elaboration, that these two entities are

26 the proper claimants to pursue any actionable claims against the Respondents. But it

27 _____

28        [2] These were filed in case 12cv2522, as Docket no. 4-27 and 5-27 (FINRA Motion),
   and 4-28 and 5-28 (FINRA Opposition).

contends that neither S&A Investments nor Harley were customers (within the meaning of the arbitration agreement) of the SCSI during the time of the alleged wrongdoing giving rise to the claims.  The FINRA Motion also argues that SCBI is not a signatory to any arbitration agreement and did not consent to arbitration.

The gist of the FINRA Opposition is that the Gavaldons were in fact Respondents' customers, and that the Respondents waived their objections to jurisdiction and forum by answering the claim before seeking dismissal.[3] The opposition argues that although the Gavaldons formed S&A and Harley as "shell corporations" at Respondents' insistence, this was a fiction, and the Gavaldons in fact owned all the assets held by S&A and Harley. It argues Respondents in fact treated the Gavaldons as customers and interacted with them in that manner over the years. The opposition argues that Respondents gave investment advice to the Gavaldons, rather than Harley or S&A, and took orders from the Gavaldons. They argue that, under FINRA's own rules, the definition of "customer" is very broad, and encompasses the Gavaldons.

The Court has reviewed the transcript of argument before the panel (Docket no. 11-2), and to the extent it shows what was presented to the panel, it essentially repeats the same arguments outlined here. There was nothing so obvious that the panel's failure to sit up and take notice would have amounted to "manifest disregard."

While the Gavaldons might have been considered "customers," the panel's decision to treat them otherwise doesn't meet the high standard for setting aside arbitrators' substantive or procedural decisions. Even accepting that S&A and Harley were "shell" entities, it's clear they were formed to comply with some kind of requirement, and that Defendants weren't amenable to dealing with the Gavaldons directly without these "shell" entities. There is evidence both S&A and Harley were actual, independent entities; for example, both had officers other than the Gavaldons.  Defendants also pointed out to the panel that Harley and S&A were formally treated as their customers in at least some

---

[3] Although this was raised before the panel, Plaintiffs have not developed this argument in their Motion to this Court.

12cv3016

respects. (*See* FINRA Motion at 18.)[4]  But even assuming the "shell" entities were fictions, they were fictions the Gavaldons agreed to. The time to object was when the Gavaldons agreed to form these entities, not later, after the relationship soured.

The fact that the Gavaldons can point to legal authority, Defendants' course of dealing with the Gavaldons, and even Defendants' own admissions might have carried the day in some other forum. But it isn't this Court's task to conduct a *de novo* review, or to decide whether the panel's decision was the most reasonable, or even whether it was right. *See Lagstein*, 607 F.3d at, 641 (court can only vacate award if it is "clear from the record that the arbitrators recognized the applicable law and then ignored it"), 643–44 (arbitrators' interpretation of arbitration agreement is entitled to the same degree of deference as their merits determination). Here, the Court can vacate the panel's decision only if the panel knew and manifestly ignored the law. With regard to the Gavaldons, that high standard is not met.

**Claims by Harley and S&A**

On November 28, 2011, approximately a year before the panel ruled on the renewed motion, S&A and Harley were added as claimants (*see* Mot., Ex. L (FINRA order granting motion to add parties)), and the award itself acknowledges this. (Award at 2.) Defendants represented to the panel that SCBI and SCI were not signatories to any arbitration agreement, and were not members of FINRA, and that SCSI, the only entity that could have been compelled to submit to FINRA arbitration, didn't begin operating until after the allegedly wrongful actions had already been completed. The brokerage agreements show American Express Bank International was signatory, and the agreements do call for arbitration before the American Arbitration Association (AAA) or the National Association of Securities Dealers (NASD), but it wasn't established that SCBI or SCI succeeded to these agreements in

---

[4] Specifically, Defendants argued that the Gavaldons didn't open or maintain either account with them, weren't authorized signatories, didn't sign or execute the arbitration agreements either for Harley and S&A or on their own behalf, and didn't receive trade confirmations for the investments at issue. Plaintiffs' exhibits to the Motion (Docket no. 9-4 at 34, 40) confirm that neither of the Gavaldons signed brokerage agreements for both Harley and S&A. Rather, a representative of Vessey Limited, a Cayman Islands corporation, signed.

1  unaltered form. For example, if the panel accepted that neither entity was a FINRA member,

2  it might have thought that provision was inapplicable.

3      For the most part, the FINRA Opposition doesn't address this argument directly, but

4  instead focuses on showing that the Gavaldons were Defendants' real customers. It does

5  argue that the Respondents were estopped from claiming they were not bound by the

6  arbitration agreements (FINRA Opposition, at 10), citing *Anwar v. Fairfield Greenwich Ltd.*,

7  728 F. Supp. 2d 462, 466 n.2 (S.D.N.Y. 2010). But this is not helpful to Plaintiffs, in part

8  because Plaintiffs are seeking to apply the principle of judicial estoppel, not collateral

9  estoppel, and in *Anwar* Plaintiffs lost on that issue. In *Anwar*, SCBI, which was a plaintiff,

10  claimed it had agreed to arbitrate before a FINRA panel and not an AAA panel as the

11  defendants argued. But judicial estoppel is aimed at preventing litigants from taking a

12  position and prevailing in one case, then taking an inconsistent position; it does not prevent

13  a litigant from taking a position inconsistent with a position it never prevailed on. *See*

14  *Levinson v. United States*, 969 F.2d 260, 264–65 (7th Cir. 1992) ("[T]he party to be estopped

15  must have convinced the first court to adopt its position; a litigant is not forever bound to a

16  losing argument.") Furthermore, the posture and facts of *Anwar* are different enough to

17  distinguish the two situations. For example, in *Anwar*, SCBI was a plaintiff seeking to

18  arbitrate.

19      Plaintiffs also argued to the panel that the relevant time period did not end on January

20  31, 2008, when the last of the investments was purchased, but that because the

21  Respondents had a duty to monitor their investments, the relevant time period was both at

22  the time of purchase, and "at all times thereafter." (FINRA Opposition at 12.) This was also

23  argued before the panel (*see* Docket no. 11-2 at 37–39), and the panel could determined

24  that Plaintiffs' losses were suffered either before SCSI commenced operation, or while the

25  accounts were held by one of the other Defendants that could not have been compelled to

26  submit to FINRA arbitration. The amended statement of claim (Motion, Ex. K (Docket no. 9-

27  5)) does not specifically allege what was or was not done between the time SCSI

28  commenced operations and the time the investments began to collapse. Rather, it

emphasizes SCBI's lack of diligence in recommending the investments in the first place, and what SCBI did from the time the investments were purchased through the time they collapsed.

While some other tribunal might have decided the issue differently, the standard of review drives the outcome here. The argument, evidence and authority before the panel were not so compelling, nor the case so obvious as to meet the standard for vacatur; nor is there any evidence the panel recognized what the law was or what the law required it to do, and then ignored it. *See Lagstein*, 607 F.3d at 641.

**Declaratory Relief**

If the Court does not vacate the panel's award, the Motion seeks a declaration that the Gavaldons are entitled to an adjudication on the merits before the AAA. Declaratory relief is appropriate only where it will serve a useful purpose by clarifying the legal relations at issue, or terminate the proceedings and afford relief from future uncertainty and controversy among the parties. *See United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

The Supreme Court has explained that, in order for declaratory relief to be appropriate, the dispute must be

> "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007).

With regard to arbitrability of claims, the Court can decide whether the parties have validly agreed to arbitrate. *See Granite Rock Co. v. Int'. Brotherhood of Teamsters*, 561 U.S. 287, 130 S.Ct. 2847, 2855–56 (2010). But whether claimants are entitled to an adjudication on the merits, or whether the arbitration panel may decide the issue on procedural grounds, is a different matter. Ordinarily an arbitration panel would make procedural decisions in the first instance. *See Lagstein*, 607 F.3d at 643–44. The Court's efforts to predict what the American Arbitration will or should decide would amount to an advisory opinion.

/ / /

Furthermore, declaratory relief would only be meaningful to the extent it would require the Association to render a decision on the merits. Because the Association is not involved in this action, and the Court lacks personal jurisdiction over it, the Court cannot compel the Association to decide the dispute on the merits. *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) (holding that federal courts may not attempt to determine the rights of persons not before the Court).

**Conclusion and Order**

For the reasons set forth above, the motion to vacate the arbitration award, or in the alternative for declaratory relief, is **DENIED**.

Because this appears to dispose of the claims raised in the complaint, Plaintiffs are **ORDERED TO SHOW CAUSE** why this action should not be dismissed. They may do so by filing a memorandum of points and authorities, not longer than three pages, explaining what issues remain to be adjudicated, no later than **April 10, 2014.**  The Court is **not** inviting a motion for reconsideration. *See* Standing Order, ¶ 4(j). If Plaintiffs fail to show cause within the time permitted, the complaint will be dismissed without leave to amend.

**IT IS SO ORDERED**.

DATED:  March 28, 2014

**HONORABLE LARRY ALAN BURNS**
United States District Judge

12cv3016